## GERKE v. THE CALIFORNIA STEAM NAVIGATION COMPANY.

The declaration of the master of a steamboat, whilst running the river, respecting fire communicating from the chimneys of the boat to the crops of grain on the banks of the river, by which the crop was consumed, are admissible to establish the liability of the owners, in an action against them to recover damages for the destruction of the crop.

Steamboat and railroad companies, in propelling boats on the river, and cars on the railroad, must provide all reasonable precaution, to protect the property of others, and they must also be properly used. Carelessness in either particular, resulting to the injury of an innocent party, will make the company liable. They are bound to temper their care according to the circumstances of the danger.

What facts and circumstances constitute evidence of carelessness, is a question of law for the Court to determine. But what particular weight the jury should give to these facts and circumstances, is a matter for the jury.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

The facts necessary to understand the points decided, appear in the opinion of the Court.

*Janes, Lake and Boyd,* for Appellants.

1. The Court erred in allowing the eighth question and answer in the deposition of McConoughay. The declarations of the master are not evidence against the owner, unless part of the *res gestæ.* Farle *v.* Hastings, 10 Vesey, 126; Innes *v.* Steamer Senator, 1 Cal., 459; Mateer *v.* Brown, 1 Cal., 221; 1 Greenleaf, 126.

The Court erred in overruling the motion for a nonsuit, there being no evidence of negligence on the part of the defendants. Rood *v.* N. Y. and Erie R. R. Co., 18 Barb., 80; Cook *v.* Champlain Nav. Co., 1 Denio, 91; Railroad Co. *v.* Yeiser, 8 Barr, 366; Radcliff Ex. *v.* Mayor of Brooklyn, 4 Com., 195; Stuart *v.* Hawley, 22 Barb., 619; Baltimore and S. R. R. Co. *v.* Woodruff, 2 Miller, Maryland R., 242, cited in 3 Liv. Law Mag., 180.

*E. Cook* for Respondent.

The authorities cited by the defendants' counsel merely go to show that there must have been negligence on the part of the

persons in charge of the boat, and so the Court charged the jury.

But we insist that the defendants, or the person in charge of their boat, were bound to know whether they could pass in safety.

See Dygert v. Bradley, 8 Wendell., 469, which was an action of trespass against the master of a boat navigating the Erie Canal, in New York, for running her against another boat lying in the canal, waiting her turn to pass the locks. It was held in that case, that the defendant, before he undertook to pass, was bound to know whether there was room (although boats had passed there for two years,) and there not being room, in consequence of which he pressed the plaintiff's boat so hard as to sink her, it was held, that the defendant was liable.

Now, it is not necessary to go so far in this case, for the reason, that any provident person must have known the danger of passing through the fields of grain, under the circumstances.

The rule of law governing this class of cases is well stated by Judge Cowen, in his treatise of Courts of Justices of the Peace, at vol. 1, p. 384.

The Judge says, speaking of an action on the case for damages : "It lies in all cases of negligence in the use or disposition of one's property, or in clearing or improving it, by which another is injured, and the true question in such case is, whether the defendant, or his servant, has been guilty of negligence. For it is a maxim in law, that a man is bound to use his own, as not to injure that which belongs to his neighbors. For example, he has a right to burn over his own fallow ground, or keep fire in his house, but if he or his servant carelessly suffer his fire to escape from his fallow, or set it on fire in a dangerous, dry, or windy time, or do not take proper care of it; if he or his servant should keep the fire carelessly in the house, by which it took fire and burned down his neighbor's house, he would be accountable in each of these cases, for any damage done to his neighbor."

And in the case of Wakeman v. Robinson & Bingham, (8 Eng. Com. Law Rep., 478,) it was held that if an injury occur, and any blame is imputable to the defendant, the action can be maintained, though the party be innocent of any intention to injure, as if he drive a horse too spirited, or pull the wrong rein, or use imperfect harness, etc.

See, also, the case of Chaplin v. Harvis, 3 Car. & Payne, 534, (14 Eng. Com. Law Rep., 711,) and in the case of Earing v. Tarnsurgh, 7 Wendell, 185. It was held that when two parties meet upon the highway, each party must keep to the right of the centre of the road, and the fact that it was more difficult for the party who caused the injury to turn out than the party who

was injured, was no excuse, unless the obstacles to turning out were insuperable, or extremely difficult.

And in the case of Cook v. The Champlain Transportation Company, 1 Den., 92, which was an action for the negligent destruction of buildings by persons in charge of a steamboat, by fire, it was held that the owner of land on the shore of a stream or lake, though the situation be one of exposure and hazard, is, nevertheless, entitled to protection against the negligent acts of persons lawfully passing with vessels or carriages, propelled by steam-engines, by which buildings are set on fire.

The doctrine governing the case is very ably discussed, and the authorities cited in the case of Hagett v. Philadelphia and Reading Railroad Company, 11 Harris Penn. R., reported in 23 Penn. State Reports, 375.

This was an action brought against the railroad company for negligence and carelessness in the management of their locomotive, whereby plaintiff's house, near defendant's road, was burned.

In that case, as in the case under consideration, it appeared that the weather was very dry and windy, etc., and that sparks were thrown fifty yards, (in our case brands of fire were thrown one hundred yards,) and that fields were set on fire in several places, about the same time.

And the defendants in that case proved, (what was not attempted in this case,) that their engines were in good order, and provided with spark-catchers.

The Court below, under the decision of the same State, (8 Barr, 366,) and which is relied upon by the defendants' counsel in this case, nonsuited the plaintiff. But the Supreme Court reversed the decision, and held that the case in 8 Barr did not decide what was evidence of carelessness, but that it must be judged by the jury, from all the evidence, as to what constituted carelessness. And the Court further says :

" The company has paid for its right-of-way, etc., but this does not cover all sorts of damages," and cite 10 Mees. & W., 425 ; 15 Beav., 322, S. C.; 19 Eng. Law & Equity Rep., 295 ; and then proceed, " and it cannot cover damages arising from negligence, for the law never anticipates this in assessing damages, and it never allows people to purchase a general immunity for carelessness. If it did, no railroad would pay the price in advance. This company, therefore, must submit to have the question of carelessness tried in this case, just as it is in others.

" They are bound to temper their care according to the circumstances of danger, (20 State Rep., 177,) and exert more care when the property of others is in danger than when it is not ; and their evidence will be tried by this rule, and if there be evidence of carelessness, the means of rebutting are so entirely in

17

the defendants' power, that it is not unreasonable to expect from them that their evidence should be very complete."

The learned counsel for the defendants also relies upon the case of Radcliff's executors v. Mayor of Brooklyn, 4 Comstock, 196.

Justice Bronson, in that case, reviews the case very ably, and his opinion is strongly in our favor.

He holds that a party is liable for the lawful use of his own property, if thereby his neighbor is injured, provided he is guilty of negligence, and the cases cited by the counsel from 18 Barbour, 81, and 22 Barbour, 619, do not conflict with the law as laid down by Judge Hager. They simply decide that negligence must be shown in order to recover.

The maxim, "sic utere tuo ut alienum non lœdas," is fully discussed, and the cases upon the subject reviewed in the case of Carson v. Godly, 26 Penn. State Rep., 111, and we invite the attention of the Court to a perusal of those cases.

Again, the plaintiff having shown an injury to his property, and that it was caused by the defendant's servants, it was the duty of the defendants to show how the boat was managed upon the occasion. Barb. v. Johnson, 23 Penn. State R., 213.

The counsel insists that the Court erred in admitting the declarations of the master.

These declarations were made at the time the fields were being fired, and what he said is a part of the res gestœ. It was a declaration accompanying an act, showing a wanton recklessness, knowing the danger of proceeding with his boat, but unwilling to lose a few hours for the wind to subside. New England Insurance Co. v. De Wolf, 8 Pick., 62; Hood v. Reeve, 3 Carr. & Payne, 532; 14 Eng. Com. Law Rep., 700; Curtis v. Ingham, 2 Vermont R., 289, and in the case of Thompson v. Chauvaux, 7 Martin, (new series, La. R.,) 331 and 333, a party defending an action of trespass, committed by another party, it was held that he thereby adopted his act, and that the same evidence which could be given against the trespasser could be given against the principal.

Now, in this case, we could have joined the masters as a party defendant, then there would be no doubt about the right to prove his declarations, and his not being joined cannot take away the right.

The corporation admit, by their answer, that they owned the boat, and that Stinson, the master, was in their employment at the time of the firing, and they come in and defend his acts.

It strikes me, what he said at the time he was doing the act, is the very best evidence that can be given. The defendants ought not to complain of what its own agent did and said upon the occasion.

Why did the defendants not call the master and let him ex-plain, in his own manner, how the fire occurred, and all the cir-

cumstances attending it.   See also the ship Portland v. Executors of Philips, 2 Sergt. & Rawle, 195, 202.

And in the case of Carson v. Godley, 26 Penn. R., 121, it was held that a party sued for injury done by reason of the insufficiency of a building he had rented, it was competent to show that other buildings, after being tested, had been found defective; so here we show that several fields were set on fire, and while being fired, the master stated that he knew the danger, but his owners would not justify his laying by.

In the language of the case last cited, "it showed a reckless perseverance in wrong-doing, which if the law cannot prevent, it will punish."   See also, Story on Agency, § 134, and in § 136, the author says:

"So with regard to acts done, the words with which those acts are accompanied, frequently tend to determine their quality. The party, therefore, to be bound by the act, must be affected by the words."   See also, 1 Gr. Ev., §§ 169, 170, 171 and 172, and in ; 113 it is stated "that whenever what the agent did is admissible in evidence, it is competent to prove what he said about the act while he was doing it."

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This was an action to recover damages for the unskillful construction of the chimneys of the steamer Swan, and the negligence of the officers and servants of the company, in running the vessel upon the Sacramento River; in consequence of which the crop of grain belonging to plaintiff, on the bank of the stream was et on fire and consumed by sparks issuing from the chimneys of the boat, in July, 1856.   The plaintiff obtained a verdict and judgment in the Court below, and the defendant appealed.

The first point made by the counsel of defendant is that the Court erred in admitting evidence of the declarations of the master.

The declarations of the master were proved by the witness, McConoughay, who states, substantially, that he was a passenger upon the boat at the time; that he saw sparks and pieces of bark on fire, flying out of the chimneys and lighting on the grass, along the edge of the river on both banks; that the wind was blowing pretty hard at the time, and the fire immediately communicated to grass, grain, or anything that was near; and that he saw the fire entering into the grain of plaintiff, which was consumed.   The plaintiff then asked the witness this question:

"What conversation was had, if any, by the officers of the boat in relation to the fire?"

The answer of the witness was:

"I heard the captain say that it was pretty hard on the

farmers to have their crops burnt up; and, if he thought the wind would lull in two or three hours, he would wait that time."

The question and answer were objected to by defendant; the objection was overruled, and the defendant excepted.

The declarations of an agent will bind the principal, if made during the continuance of the agency, and at the very time of the transaction. These declarations, when thus made, are considered as part of the res gestæ. (Story on Agency, §§ 134, 135; Greenl. E., § 113.

The question to determine is, whether these declarations of the master did constitute a part of the res gestæ. In the case of Innes v. the Steamer Senator, (1 Cal. R., 461,) it was held by Bennett, Justice, that the declarations of the master, made the next morning after the collision, were no part of the res gestæ. So, in the case of Mateer v. Brown (1 Cal. R., 224,) it was held, that the declarations of a barkeeper were not binding upon his principal, when not made in the discharge of his duty. The defendant, in that case, was an innkeeper, and the plaintiff left a package of gold-dust with the barkeeper. The declarations were not made by the barkeeper at the time he received the deposit, but afterwards, when he took the bundle out of the closet to exhibit it to a stranger. This Court held that the act of exhibiting the package to a stranger was not done in the discharge of his duties as barkeeper, and his declarations were, therefore, but hearsay.

But the circumstances of the present case are different. It appears clearly from the testimony, that the fire was communicated from the chimneys of the steamer to the shore, at places below, opposite, and above the farm of the plaintiff. This occurred on the same day, and was but one continuous act; and the declarations of the master were made during this period, and while the boat was running under his command. We think these declarations were clearly admissible.

The second point made by the learned counsel of defendant is that the Court erred in overruling the motion for a nonsuit, there being no evidence of negligence on the part of the defendant.

The general rule upon this subject is laid down with great clearness by Cowen, (Cow. Trea., 384.) Speaking of the action of trespass on the case, he says:

" It lies in all cases of negligence in the use or disposition of one's property, or in clearing or improving it, by which another is injured; and the true question in such cases is whether the defendant or his servant has been guilty of negligence. For, it is a maxim in law, that a man is bound so to use his own as not to injure that which belongs to his neighbor."

In the case of Radcliff's Executors v. Mayor and others, of

Brooklyn, Bronson, C. J., has very ably reviewed the authorities upon this question. The learned Chief Justice has stated the true rule in these clear and concise words: "An act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow." (4 Com., 200.)

The act must first be lawful; and second, it must be done in a proper manner to excuse a resulting injury.

The right of the defendant to navigate the Sacramento River with steamers, at all seasons of the year, cannot be questioned. The only question is whether there was negligence in exercising this lawful right.

We have been referred by the counsel of defendant to the cases of Stewart v. Hawley, (22 Barb., 619,) and Rood v. New York and Erie Railroad Company, (18 Barb., 80.) In the first case, the defendant set fire to his fallow, which had been previously burned over. Three days afterwards, the wind blew violently, and the fire communicated to an adjoining pasture, across which it passed to the plaintiff's premises, and burned his grass crops, etc. The Court held that the defendant was not liable. The fire was set in the dry season, in July, but in low swamp ground that had been burned over in the previous month of May. There was no brush near, and and the fire was set on a day which looked likely for rain. The Court evidently laid much stress on the fact that the spreading of the fire was the consequence of the high wind, that arose three days afterwards. In the second case, it appeared that the plaintiff had sold to the Company a strip of land for the road, of the value of sixty dollars, for the sum of one thousand six hundred dollars; and the Court held, that it was "but fair to presume that, in giving his deed to the defendant, the plaintiff must have contemplated the risk of fire from engines running on the road." It was, therefore, held, that the defendant was only responsible to the plaintiff for ordinary care and diligence in the manner of using its road. It was also held, in that case, that authority to use a steam-engine upon the road was an authority to emit sparks therefrom; and, if the most approved means which science and skill have invented are applied to prevent sparks from causing injuries, the company is not liable in case damage is occasioned by fire communicated in that manner. The company in that case, had used the most extraordinary precautions, by furnishing their engines with the most approved spark-catchers, and by supplying the road with sectional superintendents, section-masters, and subordinate watchmen.

The counsel of plaintiff have referred to the case of Haylett v. Philadelphia and Reading Railroad Company. (23 Penn. State R., 373.) It was proved, in that case, that the road passed seventy-seven feet from the dwelling-house of the plaintiff, and that

the house was set on fire by sparks from engines, passing at a time when the weather was very dry and windy, and the wind blowing strong across the road to plaintiff's house.   Sparks were seen flying from the engines to the distance of fifty yards from the road, and fences and fields were set on fire about the same time, and at considerable distances·from the road.   The defendants proved that all their engines were in good order, and were all provided with good spark-catchers.   On this state of facts, the Court below directed the jury to find for the defendant; but the Supreme Court reversed the judgment, holding that it was a question for the jury to determine, under the circumstances of that case, whether the injury was caused by the carelessness of the defendant's servants.   In delivering the opinion of the Court, Lowry, J., said:

"How is it possible for the Court to say, as matter of law, how many sparks, or how many fires caused by them, it takes to prove carelessness?  How can the law declare, except as a deduction from facts found, what are sufficient spark-catchers?  When we find fires started by a locomotive, at distances from eighty to one hundred and fifty feet from the road, how can we say that that that is no evidence of carelessness?  It is a question of fact, whether the small sparks that escape through a good spark-catcher will ignite wood at such distance.  We see wooden houses and lumber, and firewood and shingles standing all along the very edge of railroads without being burnt.  How can we say that the happening of several fires all about the same time, along the line of road, is no evidence of carelessness?"

The Court further said that railroad companies " are bound to temper their care according to the circumstances of danger, and to exert more care when the property of others is in danger than when it is not."

The doctrine laid down in that case seems to be the true rule. The Company have the right to use steam-power in propelling cars on railroads, or boats on the rivers, but it must provide all reasonable precautions, to protect the property of others; and these means of prevention must not only be provided, but they must be properly used.   Carelessness in either particular, accompanied with injury to any innocent party, will make the company liable.   What facts and circumstances constitute evidence of carelessness, is a question of law for the Courts to determine. But what particular weight the jury will give to these facts and circumstances, is a matter for the jury.

In the present case it was informally, though substantially, alleged in the verified complaint, that the chimneys of the Swan were not furnished with spark-catchers.   This allegation is not specifically denied in the answer, and must be taken as confessed. This admission is evidence of carelessness, and taken in connec-

tion with the other testimony, justified the Court in refusing a nonsuit, and amply sustains the verdict of the jury.

The third and fourth points of defendant have been substantially disposed of in our decision of the first and second.

Judgment affirmed.