[No. 1,058.]

# M. MEYER, Appellant, *v.* VIRGINIA & TRUCKEE RAILROAD COMPANY, Respondent.

Declarations of an Agent—When Inadmissible in Evidence.—The declarations of an agent in charge of a station and warehouse belonging to the defendant, at the time the goods of plaintiff and his assignors were burned therein, as to what occasioned the fire: *Held*, upon the facts stated in the opinion, inadmissible in evidence.

Instructions—Refusal of, when will be Sustained.—Where the record on appeal fails to show that an instruction was applicable to the evidence, the action of the court in refusing it will be sustained even if the reason given by the court for its refusal was not sufficient.

Idem—Not Pertinent to Issues.—Instructions that are not pertinent to any issues in the case should be refused, although they embody correct propositions of law in the abstract.

Idem—Repetition of, when not Prejudicial.—Plaintiff complained of an instruction given by the court of its own motion: *Held*, that even if it was erroneous it could have done no harm to plaintiff, because it was but a repetition, in substance, of one given at his request.

Appeal from the District Court of the Third Judicial District, Lyon County.

The facts are stated in the opinion.

*Lewis & Deal*, for Appellant:

The points and authorities cited by counsel appear in the opinion.

*B. C. Whitman*, for Respondent.

By the Court, Leonard, C. J.:

It is alleged in the complaint herein, that on the thirteenth day of September, 1879, the plaintiff and other persons named were the owners of certain personal property of the value of two thousand six hundred and forty-nine dollars and eighty-five cents, which property was, on said day, stored by defendant in its warehouse, at the Mound House, on the line of its road; that the claims for damage of the other parties mentioned were, prior to the commencement of this action, for a valuable consideration paid

by plaintiff, sold, assigned, transferred, and set over to plaintiff; that defendant's locomotives were so imperfectly constructed and so deficient in the usual and ordinary appliances used on locomotives to prevent the escape of fire, sparks, and coals, and said locomotives were so carelessly run and managed by defendant's agents, servants, and employés, that said warehouse was fired and completely destroyed by fire carelessly and negligently dropped and thrown from said locomotives; and all said personal property in the complaint described was destroyed by said fire, whereby plaintiff and the other parties mentioned were damaged in the sum of two thousand six hundred and forty-nine dollars and eighty-five cents.

Defendant answered and admitted that the warehouse and the said property of plaintiff and his assignors were destroyed by fire at the time and place alleged; but, among other things, denied all allegations charging imperfect construction of its engines and deficiency in the usual and ordinary appliances used thereon to prevent the escape of fire, sparks, and coals. It denied all allegations of carelessness or negligence in running or managing its engines, or that the fire was caused by any act or omission of it or any of its agents, employés, or servants; or that plaintiff, or any of his assignors, had been damaged in any sum by reason of any carelessness or negligence of the defendant or any of its agents, servants, or employés. The verdict and judgment were for the defendant. This appeal is taken from an order overruling a motion for new trial and from the judgment.

1. It is urged by appellant that the court erred in refusing to allow witness Burnett to answer the following question, asked for the purpose of showing that defendant's engines fired the warehouse, viz.: "At the time the building was burning, did you make any statement to J. R. Shaw as to what occasioned the fire? If so, what was that statement?" Shaw was one of the owners of goods burned, and one of plaintiff's assignors, and he was also asked to state whether or not Burnett told him, at the time the building was burning, what occasioned the fire, and, if so, what that

statement was. The court refused to permit the witness to answer, and its action in respect to these questions presents an important subject for our consideration. No part of the evidence admitted is set out in the transcript. It is only shown that, at the trial, "each party introduced evidence tending to establish the issues raised by the pleadings;" and it is agreed that, at the time of the fire, Burnett was defendant's agent, having charge of the station and the warehouse burned. In its order overruling the motion for a new trial, the court said: "Burnett's agency was confined to the charge of the station and warehouse; he had no charge over the engines, or any authority to run or manage them. His business, as station and warehouse agent, had no connection with the construction or the management of the engines." There can be no serious difference of opinion in relation to the law of evidence touching the question in hand, but it is oftentimes difficult to apply the law to the facts presented.

Mr. Justice Story thus states the general principle: "Where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting a part of the *res gestæ*." (Story on Agency, sec. 134.)

And in *Enos* v. *Tuttle*, 3 Conn. 250, which has since been followed in the same state, and been recognized as sound law by other courts, it said that declarations to become a part of the *res gestæ*, must have been made at the time of the act done which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction.

In *Franklin Bank* v. *Navigation Co.*, 11 G. & J. 33, the court said: "In general, declarations or statements by third persons are inadmissible; that, however, is not the universal principle, and does not apply to the authorized declarations or representations of an agent. The rule springing from the relation of principal and agent being that the representations or declarations of an agent made in the course

of and accompanying the transaction which is the subject of inquiry, and, acting within the scope and limits of his authority, may be proved. But it does not extend to declarations or statements made after the transaction, though in relation to it; and the principle upon which the declarations or representations of an agent within the scope of his authority, are permitted to be proved is that, such declarations, as well as his acts, are considered and treated as the declarations of his principal. Whatsoever is so done by an agent is done by the principal through him as his mere instrument. So, whatsoever is said by an agent, either in the making a contract for his principal, or at the time and accompanying the performance of an act within the scope of his authority, having relation to, and connected with, and in the course of, the particular contract or transaction in which he is then engaged, is, in legal effect, said by his principal, and admissible in evidence; not merely because it is the declaration or admission of an agent, but on the ground that, being made at the time of, and accompanying, the contract or transaction, it is treated as the declaration or admission of the principal, constituting a part of the *res gestæ*, a part of the contract or transaction, and as binding upon him as if in fact made by himself. But declarations or admissions by an agent, of his own authority, and not accompanying  *  *  *  the doing of an act in behalf of his principal, nor made at the time he is engaged in the transaction to which they refer, are not binding upon the principal, not being a part of the *res gestæ*, and are not admissible in evidence, but come within the general rule of law excluding hearsay evidence; being but an account or statement by an agent of what has passed or been done or omitted to be done; not a part of the transaction, but only statements or admissions respecting it, and if they relate to anything resting within his knowledge material to either party, it must be proved by his testimony, and not by evidence of his mere assertion, which is no proof of it."

From the great number of cases bearing upon this question, but presenting different facts, we refer to the following, which establish the rule as stated above: *Fairlie* v.

*Hastings,* 10 Ves. Jun. 125; *Kirkstall Brewery Co.* v. *Furness Railway Co.,* 9 Law Rep. Q. B. Cas. 470; *Haynes* v. *Rutter,* 24 Pick. 245; *Ashmore* v. *Penn. S. T. & T. Co.,* 38 N. J. L. 14; *Byers* v. *Fowler,* 14 Ark. 105; *Penn. Railroad Co.* v. *Brooks,* 57 Pa. St. 343; *Magill* v. *Kauffman,* 4 S. & R. 320; *Franklin Bank* v. *Cooper,* 39 Me. 555; *Luby* v. *Hudson River R. Co.,* 17 N. Y. 131; *Runk* v. *Ten. Eyck,* 24 N. J. L. 760; *Gerke* v. *Cal. Nav. Co.,* 9 Cal. 256; *Bradford* v. *Haggerthy,* 11 Ala. 701; *Verny* v. *The B. C. R. & M. R. Co.,* 47 Iowa, 551; *Thallhimer* v. *Brinckerhoff,* 4 Wend. 398; *Bank of the Northern Liberties* v. *Davis,* 6 W. & S. 289; *Pemigewassett Bank* v. *Rogers,* 18 N. H. 261; *Maury* v. *Talmadge,* 2 Mc-Lean, 159.

It remains to apply the law to the facts as they are presented. There were two important facts which plaintiff was bound to prove, in order to recover. First, that the fire was caused by sparks or coals from the defendant's engines; and second, that their escape from the engines was due to the imperfect construction of the latter, or the careless or negligent management of the same. These were independent, vital issues. The station agent's duties had no connection with either; that is to say, as to the origin of the fire or the negligence charged, he was not the inculpated agent, and no negligence is alleged against the defendant by reason of his failure to use all means in his power to save the goods. The interval of time that elapsed between the escape of the sparks or coals from the engines, and the making of the statement, is not shown. It seems, however, from the form of the question, that it was while the building was burning. The goods may have been destroyed at the time, and, consequently, the entire injury to owners may have been complete when it was made. It may be, therefore, that in any view, the declaration was a mere narration of a past transaction, and that for this reason alone, according to all the authorities, it was inadmissible. But whether it was so or not, a question we do not decide, our opinion and conclusion will be based upon other facts.

For many reasons we are satisfied that Burnett's declaration was inadmissible. Under the circumstances shown

any declaration by him as to the *origin* of the fire could not have been competent testimony, although the fact of *burning,* if that had been in issue, under certain circumstances, might have been proven by the agent's declaration. Under possible conditions a statement by the agent of the fact of burning might have been within the line of his duty, but in the absence of special authority it could not have been any part of his duty, or in his power, to explain how the fire originated. It was Burnett's duty to deliver the goods when they were called for; and if Shaw had not known that they had been burned, or were in such condition that they could not be delivered, and had demanded them, or made inquiries in relation to them which rendered it necessary for Burnett to deliver them, or upon failure to do so, to give a reason for his failure, then any statement as to the cause of the failure, necessary to explain the same, would have been admissible; but the only necessary explanation would have been to the effect that they had been burned. Any statement beyond that fact would not have been required in order that the agent might perform his entire duty to Shaw; and not having been engaged in the performance of any act or duty within the scope of his authority, at the time, he had no implied power to make any statement which the defendant was under no obligation to make.

Any inquiry as to the origin of the fire was of no consequence to Shaw, except as a means of proving one of the essential facts in this case in order to bind the defendant—a fact which the latter was in no manner bound to furnish. A statement as to the origin of the fire did not assist Shaw in obtaining the goods, and it was of no possible benefit, except as a means of establishing defendant's liability as above stated. It was, then, a declaration voluntarily made by Burnett. It was outside of his duty as agent and beyond the scope of his authority. If he had authority to state how the fire originated, under the circumstances shown, he had power, also, to declare that the engines were carelessly managed or improperly constructed. Such declarations would not have been necessary for the proper dis-

charge of his duties to Shaw, and he had no implied authority to make them, and thereby bind the defendant.

This is, perhaps, a sufficient answer to appellant's claim of error upon this point, but there are others, some of which we proceed to state.

It is not shown that Burnett at the time the declaration was made, was engaged in the performance of any act or duty imposed upon him by his employment, or that it was made in pursuance of any duty as agent. True, he was agent, and as such, had charge of the station and warehouse; but for aught that appears, *he was doing nothing as* agent, either within or without the line of his duty. He and Shaw may have been standing idly by, or sitting down at a safe distance from the scene of conflagration. The statement may have been a casual remark made by the agent of his own motion, or it may have been made in reply to a question asked by Shaw for the purpose of gratifying his curiosity, or of acquiring information which neither the defendant nor its agent was under any legal or moral obligation to impart. In *Franklin Bank* v. *Steward,* 37 Me. 524, the witness, at the request of Steward, called at the bank and inquired of the cashier if a note, on which Steward was surety, had been paid, and the cashier replied that it had been. Witness communicated the answer to Steward, who then gave up security held by him, and the maker of the note thereafter became insolvent. The court held that it was not the duty of the bank to communicate such information further than it was to be ascertained from its records and papers, and said: "Such communications are matters of courtesy and convenience, not of right. Being no more matters of duty on the part of a bank than on the part of an individual, its cashier can not be considered its official or authorized agent to make them, unless they constitute a part of some transaction performed at the time of making them."

And although in *Hynds* v. *Hays, supra,* it was decided that it was a part of the official duty of a bank manager to deliver bills that had been paid, *when called upon so to do;* that his failure to do so when demanded was an *act* for

which the bank was responsible, and that the manager's declarations at the time, in explanation of the failure, was a part of the act, and, consequently, admissible in evidence; still, the court said: "The declarations of an agent made while actually transacting for his principal the business to which the declarations relate are admissible only because they are part of the *res gestæ* and are proper for a correct understanding of the acts. They are said to be verbal acts. But the oral admissions of even a party are often loosely and inconsiderately made, and are then, in the very nature of things, very unreliable evidence, and it is not certain that justice would not often be better attained without them. We do not think it would be wise, at any rate, to extend the rule so as to make evidence of the admissions of the agent when not engaged in the business which the admissions tend to explain. A man does not weigh his own casual observations, and is very liable to be misunderstood. It is enough to hold him responsible for his own words, without also charging him with those of his agent, who is not employed to bind him by utterances, except in connection with business, and while it is being done. (And see *Garth* v. *Howard*, 8 Bing. 453.)

*Pool* v. *Bridges*, *supra*, was an action of trover against a deputy sheriff who attached wool, etc., as the property of one Scholfield. Plaintiff claimed it, and at the trial a witness was permitted to testify that the plaintiff called on Scholfield about a week before he absconded, to ascertain what progress he made in manufacturing his wool; and that Scholfield then showed him wool, yarn, and booking, which he said were plaintiff's, and which plaintiff examined; and that the wool, etc., thus shown were the same that were attached by the defendant. Upon these facts the court said: "The property in question is supposed to have been in the possession and under the control of Scholfield. It appears, also, that it was so situated in regard to other property of the same kind belonging to Scholfield himself, or to other persons, that none but Scholfield could distinguish them. *If he had been heard to say that the particular parcel in question belonged to the plaintiff, without being en-*

gaged in any transaction relating to the property, this would be mere declaration and hearsay. But if he was then employed in any act respecting the goods, such as separating different parcels for the purpose of distinguishing what belonged to one person and what to another, what he said while he was doing it would be considered as a part of the transaction, and admissible in evidence. It would be like labeling the goods with the name of the owner, which though in one sense a declaration, yet would be construed an act indicative of proprietorship of the goods." "Declarations standing by themselves are hearsay; there must be some main fact or act, which is itself admissible in evidence." (*Lund* v. *Inhabitants, etc., supra*, and *Mason* v. *Croom*, 24 Ga. 216; *Mateer* v. *Brown*, 1 Cal. 224.)

So in *Baptist Church* v. *Brooklyn Fire Ins. Co.*, 28 N. Y. 160, this language is used by the court: "As principal evidence it was incompetent, being the declaration of a third person, who, though an agent of the defendants, was not then engaged in the performance of any act relating to his agency, so as to bring the case within the rule which allows the declarations of an agent as part of the *res gestæ*."

*Roberts* v. *Burks*, 12 Am. Dec. 325, was trover against four defendants. Two of them were the owners of a warehouse, and the other two did business for them as warehouse agents. The only testimony adduced to charge the owners was the acknowledgment of the agents that the goods were in the warehouse, and that they had taken them out and shipped them aboard of a boat belonging to the owners of the warehouse, and at their order, to make up a deficiency in the load. We quote from the opinion: "The principle that the declarations or confessions of an agent, except they be made at the time and compose a part of the acts done by him for his principal within the scope of his authority, can not be given in evidence to charge the principal, is too well settled to need authority to support it. The confessions of the agents in this case do not appear to have been made at the time of doing the acts, nor does it appear that they were executing any authority given them, except by their own declarations. The evidence was, therefore, incompetent as

to the keepers of the warehouse and insufficient to warrant a verdict against them."

But it is urged that the declaration was admissible because it was a part of the agent's right and duty to make it, and, consequently, that he had authority so to do and to bind defendant thereby.

Let us admit that an agent authorized to conduct a business enterprise is to be regarded as empowered to take all steps necessary to carry on the business; that there is an implied authority to do all things necessary for the protection of property intrusted to his keeping, or for fulfilling a duty which he has to perform; that an agent's admissions bind his principal if the former is delegated to conduct business of such a nature that its due and ordinary prosecution requires admissions to be made by him in the exercise of the discretion which it is his duty to use in conducting the business intrusted to him. Still, none of these principles justify the admission of the agent's statement in this case. Burnett had charge of the warehouse and of the goods. Presumably his duty was to protect the goods and deliver them to the owners when demanded, upon payment of charges due; and if for any reason he was unable to deliver them upon demand, it is probably true that a failure to do so would have been an *act*, and that declarations necessary for a proper explanation thereof would have been admissible, if made at the time. But it is not shown that there was a demand or inquiry prior to the statement, or that when the latter was made, any proper explanation was required by Shaw, in order that he might know just how the goods were situated, and that they could not be delivered. It certainly was not the agent's duty to make delivery without request so to do; and it was not his duty to make explanation of the cause of inability to deliver, if Shaw was already aware of it. Until delivery became a duty there was no failure on the agent's part; consequently, there was no act to be qualified or explained, and for this reason the statement was incompetent.

Three cases are cited by appellant in support of the claim that it was the agent's right and duty to state not only that

the goods were burned, but, also, as to the origin of the fire.

The first is *Morse* v. *Conn. River Railroad Co.*, 6 Gray, 450. The case shows that the next morning after a trunk had been lost, in accounting for it, upon inquiry made by the owner, or in his behalf, the conductor or baggage-master told the witness that, the night before, a gentleman stepped up and claimed and took a trunk of the same description. But the same morning, the station agent told the witness that he thought the trunk was carried to Northampton, the night before, with other baggage. At the trial the court refused to allow the facts above stated to be given in evidence. This was held to have been error, and the court said: "It was part of the duty of those agents to deliver the baggage of passengers and to account for the same if missing, provided inquiries for it were made within reasonable time. These declarations were, therefore, made by them as agents of the defendants, within the scope of their agency and while it continued." The distinctions between that case and this are so apparent that comment is unnecessary. For aught that appears, it may have been proven that it was a part of the agent's duty to account for missing baggage. If so, that fact was decisive against the defendants. But at all events, it was his duty to deliver the baggage of passengers when called for, and it is shown that inquiries were made on behalf of the plaintiff in relation to the same. Under such circumstances it may well be said that failure to deliver was an *act*, and that statements made by him explanatory thereof, were a part of the *res gestæ* and admissible. But in the case at bar, as we have seen, it is not shown that Shaw demanded the goods, or expected to receive them, or that the agent was at the time in any manner engaged in the performance of any duty required of him, or that he was empowered to make the declaration, or that it was necessary for the proper discharge of his duties.

The second case is *Burnside* v. *Grand Trunk R. Co.*, 47 N. H. 554, and the principle decided is the same as in the one just referred to. Commenting upon this case in *Packet Co.* v. *Clough*, 20 Wall. 541, the court said: "It simply

decides that the statement of the general freight agent, as to the condition of goods delivered to him for transportation, made while the goods are still in transit, or while the duty of the carrier continues, are admissible in evidence against the company. This was a case of a contract unexecuted, and while it remained unexecuted, the agent had power to vary it; had in fact complete control over it. The transaction was still depending, and the agent was still in the execution of an act which was within the scope of his authority." It was the defendant's duty under a contract to deliver certain bags at Milwaukee, and it was the agent's duty to see that the contract was carried out. The bags were delivered to the agent for transportation in August, 1862, and in April, 1863, plaintiff applied to the agent for information concerning them. The agent told him he had ascertained they were at Sarnia, in defendant's depot, under a large lot of flour. It was plainly within the agent's authority and the line of his duty to find and forward the property at the time the plaintiff applied to him, and his statement explanatory of defendant's failure to comply with its contract was undoubtedly admissible as part of the *res gestæ*.

The third case (*Lane* v. *Railroad Co.*, 112 Mass. 462) is of the same nature, and the principles decided are identical with those enunciated in the sixth of Gray.

The court did not err in rejecting the agent's statement.

2. It is claimed the court erred in refusing to instruct the jury that, if they believed from the evidence, a locomotive engine, properly constructed and skillfully managed, would not set fire to a building near the railroad track, or to inflammable material that could, when set on fire, communicate fire to such building; and that, if they believed from the evidence, plaintiff's property was destroyed by fire or sparks from defendant's engines, without fault or negligence on the part of plaintiff or his assignors, they would find for the plaintiff.

The reason assigned by the court for refusing to give this instruction was, that there was no evidence of any inflammable material that did, or could, if ignited, communicate

fire to the building.  There is nothing before us to show there was any evidence that an engine, properly constructed and skillfully managed, would not set fire to a building or to inflammable material along the track.  The instruction, therefore, may have been properly refused, even though the reason given by the court was not sufficient.  (*Fulton* v. *Day*, 8 Nev. 84.)  Every presumption is in favor of the action of the court, and if there was error it must be shown.

3. Appellant objects to the second instruction given for respondent, to the effect that, under the pleadings, the jury should find for the defendant, if they believed from the evidence that its engines were properly constructed and *carefully* run.  The point of objection is, that the requirement of *skill* in the management of engines was ignored.  We deem it unnecessary to declare whether or not an engine can be *carefully* run or managed, so far as the defendant is concerned, in the absence of *skill* on the part of the engineer.  The defendant was not charged with *unskillful* management of the engines.  It is only alleged in the complaint that the engines were *carelessly* and *negligently* run and managed.  If there is a distinction between carelessly running an engine and unskillfully running it (a question we do not decide), proof of the latter fact was not admissible under the pleadings, and an instruction that the defendant was bound to manage its engines skillfully would have been error.  Instructions that are not pertinent to any issues in the cause should be refused, although they embody correct propositions of law in the abstract.  (*Conlin* v. *S. F. and S. J. R. R. Co.*, 36 Cal. 410.)

4. Complaint is made because the court instructed the jury that the defendant was required to use the "*best generally known* practical appliances within its reach," to prevent the destruction of the property by fire.

We shall not consider this instruction with a view of ascertaining whether it is or is not correct in principle.  The defendant was only charged with negligence in failing to use engines having the *usual and ordinary appliances* for preventing the escape of fire; and at the request of plaintiff, the

court charged the jury that "the defendant was required to use the best known appliances to prevent injury to others from fire, and to employ careful and competent engineers; and a railroad company which fails to use *the best generally known* practical appliances within its reach, to prevent the destruction of property, does not exercise the care of a man of common prudence." The instruction complained of, given by the court of its own motion, even though it was wrong, could have done no harm to plaintiff, because it was but a repetition, in substance, of the one given at his request. ·

We find no error in the record, and the order and judgment appealed from are affirmed.