The opinion of the court was delivered by
Tilghman, C. J.
This is an action of debt on a single bill, for 5000 dollars, given by the defendants below, (who are plaintiffs in error,) to the Huntingdon Bank, dated the 6th May, 1818, and payable 12.0 days after date. Part of the money was paid before *268 the commencement of the suit. The plaintiff’s demand was 3650 dollars, with interest from the 27th April, 1819. Thirteen exceptions were taken by the counsel for the defendants, on the trial in the Court of Common Pleas, bui the whole may be reduced to a few principles. The defendants'pleaded payment, with leave to give the special matters in evidence, and afterwards gave, notice of the special matter which they intended to prove. The substance of this special matter was, that about the latter end of this year 1814, or beginning of 1815, a certain William Patton entered into an agreement with the Huntingdon Bank, by which the bank was to lend him 10,000 dollars, on the security of seven bonds from Edioard B. Patton, and David R. Porter, to the said William Patton, amounting to about the sum of 11,000 dollars, with warrants of attorney to confess judgment thereon. William Patton was at the same time to give his own note for 10,000 dollars, with indorsers, which was to be received from time to time, until the bank received full satisfaction for the 10,000 dollars lent to William Patton, with interest. But it was understood, that the bank was to look to the assigned bonds only, and never to proceed against William Patton, or his indorsers on the note, which was given merely to comply with the form of the bank. The surplus produced by the bonds, beyond the payment of the 10,000 dollars and interest, was to be applied to the payment of the single bill, now in suit, which was given by the defendants, in consequence of their being securities for William Patton, to the bank for another debt, due previous to, and at the time of borrowing the 10,000 dollars. The assigned bonds, if they had been prosecuted by the bank, with due diligence, would have been sufficient to pay the 10.000 dollars and interest, and also the balance due on the single bill, on which this action was brought. But in consequence of the neglect of the bank, the defendants lost all benefit from them: This is a summary of the case, which the defendants undertook to make out. In the trial of the cause, the defendants produced and offered in evidence the seven bonds from Patton and Porter to William Patton, which had been assigned to the bank, and the court permitted them to be road in evidence, declaring at the same time, that it was understood, the defendants were after-wards to prove, that the bank had agreed to apply the overplus, after paying the 10,000 dollars and interest, to the discharge of the debt now in suit. The defendants, after this, offered in evidence, the deposition of William R. Smith, which was rejected by the court, and on the propriety of that rejection, the cause chiefly depends. Mr. Smith was cashier of the bank, at the time of this 10.000 dollars loan. There was no objection to his competency, but only to the matter .of his testimony, as irrelevant. His deposition, if received, would have proved, that the boai’d of directors of the bank, had authorised the loan of 10,000 dollars to William Patton, on his assigning to the bank the seven bonds before-men *269 tioned with warrants of attorney to confess judgment, and giving his own note with indorsers, for 10,000'dóllars. And Mr. Smith understood, although his testimony is not quite positive, that no recourse was to be had tot he drawer or indorsers of the notes. But he says nothing of any agreement, that the surplus of the bonds should be applied to the discharge of the debt in suit. How then could his testimony be relevant? ' What had the defendants to do with thse bonds, or the surplus which might arise from them? What right had they to call the bank to an account for negligence in collection? The surplus, there being no agreement to the contrary, belonged to William Patton, who might dispose of it as he pleased. It was on the principle of the defendants having no right in these bonds, that the court below rejected the testimony. For the president said, that if any part of Mr. Smith’s deposition proved an agreement of the directors of the bank, that any portion of the proceeds of the bank should be applied to the debt in suit, they would admit it. And he called on the counsel for the defendants, to point out any passage in the deposition, which he considered as evidence under the principle adopted by the court — but this the counsel declined, and insisted that the whole deposition was evidence. I have examined that deposition very attentively, and can perceive nothing in it which proves any thing like an agreement of the directors of the bank, that the surplus of the bonds, should there be any, should be applied towards the discharge of the debt in suit; or any agreement, or order, of William Patton, that it should be so applied. I agree in opinion, therefore, with the president of the Common Pleas, that the deposition was not evidence, because no part of its contents wás pertinent to the issue. For the same reason, the court was right, in rejecting the deposition of David R. Porter, the only part of whose testimony that had a bearing on the issue, was, “ that the officers of the bank told him, that the bonds were to be applied to the payment of the debt due by William Pátton, and the money he was about to get.” But surely, a corporation is not to be affected by loose declarations of this kind. Who the officers were, that said this to Mr. Porter, we know not; nor was there any evidence, that they were authorised by the board of directors, to speak for them. If this board did their duty, in keeping written minutes of their transactions, these minutes might have been resorted to. But even supposing, as has been suggested, that this board kept no minutes, at the time of'this transaction, and that parol evidence was therefore admissible, the declarations of their officers would' not have bound them, without proof that they were authorised by the directors. And if they had been authorised, there would have been no difficulty in it, as William R. Smith, the former cashier, was a competent witness. The depositions of Mr. Smith and Mr. Porter, being thus disposed of, a variety of evidence offered by the defendants falls with them. Such as the proof of the property of which Patton and Porter *270 were possessed, when their bonds were assigned to the bank, and for some time after — the judgments which were afterwards obtained against them, by various persons — every thing, in short, which had a tendency to prove, that the whole amount of the assigned bonds might have been recovered, but for the negligence of the bank. But an occurrence of a singular nature, afterwards arose in the trial of this cause. The bonds had been read to the jury, and the counsel for the defendants claimed the right of arguing on them, and sending them out with the jury. But this the court refused, because, they had permitted the bonds to be read, on a condition to be afterwards complied with, which had not been performed; that is, that proof should be given, of an agreement by the directors of the bank, that some part of the proceeds of these bonds should be applied towards the discharge of the debt in suit. In this opinion, I think, the court was perfectly right. It has grown into a habit, within these few years, for counsél to propose a chain of evidence, the first links of which depend on those which follow, and would not be supportable without them. Now, although gentleman of honour, (and suchl take the counsel in this cause to be,)would scorn to impose on the court, by pledging themselvesfor what they knew they could not perform, yet it may happen, that there may be others who would make no scruple of liberal promises, provided they could smuggle into the jury box, a piece of evidence which ought not to have got there. The court should, therefore, keep a wary eye on proceedings of this kind, and take care to instruct the jury to pay no regard to the evidence which they have heard, whenever the condition on which it was introduced, is not complied with. Now in the present case, the assigned bonds in themselves had no relation to the cause at issue. It lay on the defenfendants, therefore, to connect them with it, by subsequent evidence; and failing to do this, the bonds were out of the question. The counsel, therefore, had no right to argue on them, as if they were in evidence, nor would it have been proper, that the jury should take them out with them. There is another bill of exceptions in the record, which, though not much insisted on, ought not to pass unnoticed, as it is matter of some importance in practice. The court was requested, by the counsel for the defendants, to suspend the trial, until the bills of exceptions were drawn up in forms and sealed by one of the judges. This the court refused, on account of the delay it would occasion, but a note of the exception was taken, to he afterwards reduced to form. I do not know that the conduct of the court, in a case of the kind, is the subject of a bill of exceptions. There can be no impropriety, however, as the subject is before us, in giving our sentiments on it. The counsel, who takes an exception, has a right to have it fixed, immediately. But this may be done, without drawing up the bill in full form. A note in writing, is sufficient; and such a note should never be omitted. We have frequently experienced great inconvenience, *271 from the want of it. In. the present instance, however, the court did immediately reduce the substance of the- exception to writing, so that there was no cause for complaint. The first and second errors assigned in this case, were abandoned, and all the others have either been particularly noticed, or fall so directly within the remarks I have made, as not to require further attention. I am of opinion that the judgment should be affirmed.
Judgment affirmed.