## Bank of the Northern Liberties *against* Davis.

Where a witness gives evidence against the party calling him, and is an unwilling witness, or in the interest of the opposite party, he may be asked by the *party calling him*, at the discretion of the court, whether he has not on a former occasion given different testimony as to a particular fact.

In an action against a bank, declarations by the cashier or teller respecting the genuineness of certain checks purporting to have been drawn by the plaintiff, made at a period subsequent to their presentation, are inadmissible to affect the defendants.

ERROR to the District Court for the city and county of *Philadelphia.*

*Assumpsit* for money had and received, money paid and advanced and on an account stated, by Isaac E. Davis and others under the name and style of the Shipley Benevolent Society of the Northern Liberties of Philadelphia, against the Bank of the Northern Liberties. The defendants pleaded *non assumpsit* and payment.

The plaintiffs called Alexander P. Milnor, who testified that he was first teller of the bank, and was appointed in November 1839. He then proved the bank-book of the account of James J. Richmond, William Winters and Edward L. Young. This book was headed "Bank Northern Liberties in account with Shipley Benevolent Society of the Northern Liberties." It debited various sums from November 1839 to November 1840, amounting, in all, to $300.90, and credited various checks from December 1839 to November 1840, amounting to $305. On being shown certain checks of the dates and amounts stated in the bank-book and signed "Jas. J. Richmond, Wm. × Winters, Edward Young," the witness stated they were all paid by him, and he saw them last in the hands of Robert M. Lee, Esq., about February 1842. He

[Bank of the Northern Liberties v. Davis.]

stated as to a check of April 16, 1841, signed " Jas. J. Richmond,
                    his
Wm. × Winters, Edward L. Young," which was produced, that
        mark.
to the best of his knowledge he believed it to be the same, though
he could not swear, which was presented to him by Mr Lee, and
payment refused by the defendants' direction.

The witness then proved the firm-book of the bank, in which
                                    his
were the signatures, " Jas. J. Richmond, Wm. × Winters, Edward
                                            mark.
L. Young," and stated he was present when they all signed.    To
a question by the plaintiffs whether the checks were genuine, he
said; " I paid them as genuine, and I cannot say positively, now,
that they are not genuine.    There is a slight difference, not more
than is usual with persons who don't often write their own names.
The omission of the L. in all these checks, I did not observe
before.    I can't say that they are not genuine.    I believe that they
were written by the parties, except Winters's name, which, it was
agreed, when they signed in the firm-book, was to be written by
Richmond.    Winters could not write, and made his mark.    Young
was to write his own name."

1. The plaintiffs then asked the witness whether he had not, on
former occasions, given different testimony respecting the genuine-
ness of these checks.    The defendants objected to this question,
but the court overruled the objection, saying that the witness was
an unwilling witness, and might be so treated by the plaintiffs;
and the defendants excepted.

The witness then testified; " The mayor of the Northern Liber-
ties pointed out the difference, which I admitted, but did not ex-
press any opinion whether they were forgeries or not.    I was pre-
sent before Judge Barton, and examined in the Criminal Court:
did then say, that, with the exception of two checks, my belief
was that they were not genuine.    The two checks which I then
thought were genuine, were these (referring to two of the checks
credited in the bank-book).    The society said they were genuine."

On his cross-examination he stated that he paid all the checks
to Richmond, who presented them; but refused payment of the
check of April 16th 1841, because they had overdrawn.    That he
did not (now) perceive sufficient discrepancy between the checks
and the names in the firm-book, to justify the belief that they were
not genuine.

2. The plaintiffs then called Robert M. Lee, Esq., who testified
that he called at the bank with this check of 16th April 1841, and
had a conversation with the cashier and Milnor.    The defendants
objected to evidence of conversation with the cashier and Milnor,
or either of them; but the court admitted the evidence and sealed
an exception.

The witness then said; " Milnor admitted the checks were for-

[Bank of the Northern Liberties v. Davis.]

geries. There was no dispute about the forgery. The cashier said he believed them to be forgeries, but that they would not pay the check. It had better, he said, be decided by suit; and referred me to Mr Tyson."

The defendant then called Milnor, who testified; "I told Mr Lee, when he called at the bank, that the parties had no funds there to pay the check of 16th April 1841. I did not admit the checks were forgeries. I did not observe the omission of the L. from the two admitted checks, when I was examined in the Criminal Court. If it had been adverted to, I should have spoken differently; but I did not speak positively before Judge BARTON."

The jury rendered a verdict for the plaintiffs. The defendants assigned various errors in this court, of which the following only were noticed on the argument.

1. Evidence was admitted by the court allowing the plaintiffs below to discredit their own witness on a particular fact, by introducing matters which took place before the Criminal Court.

2. The statement of R. M. Lee, respecting an alleged conversation between him and Milnor and the cashier, was incompetent.

*Tyson,* for the plaintiffs in error, cited, on the 1st error, 1 *Stark. Ev.* 185, 237; 1 *Phil. Ev.* 336; *Greenl. Ev.* 492; and, on the second, contended that the declarations of the officers not having been made while acting in their official capacity, were not evidence to affect the bank. *Ang. Corp.* 395.

*Graham,* contra. Though a party calling a witness is not allowed to impeach his general character, yet he may show he has told a different story on a former occasion. *Cowden* v. *Reynolds,* (12 *Serg. & Rawle* 281); 1 *Mood. & Rob.* 414; 1 *Stark. Ev.* 215.

The opinion of the Court was delivered by

ROGERS, J.—Leading questions are not allowed on an examination in chief. But if a witness should appear to be in the interest of the opposite party, or unwilling to give evidence, the court will allow the examination in chief to assume the form of a cross-examination. The mode of examination is regulated by the discretion of the court, according to the disposition and temper of the witnesses; and where these appear to be adverse, the court frequently permits a cross-examination by the party who calls him. So a party cannot discredit the testimony of his own witness by general evidence of incompetency; for it would be unfair if he should have the benefit of his testimony if favourable, and be able to reject it if the contrary. Where, however, a party is under the necessity of calling a witness for the purpose of satisfying the formal proof which the law requires, he is not precluded from calling other witnesses, who give contradictory testimony. And even where a witness by surprise, gives evidence against the party

who calls him, that party will not be precluded from proving his case by other witnesses; for it would be contrary to justice, that the treachery of a witness should exclude the party from establishing the proof by the aid of other testimony. 1 *Stark. Ev.* 216, 188; *Alexander* v. *Gibson* (2 *Camp.* 556). That the court which tries the cause, should have the power to depart from the ordinary rule in certain cases, is absolutely necessary to prevent a failure of justice: for frequently a party may be compelled to call a witness known to be in the interest of the adverse party, or he may, by artifice and fraud, be entrapped into his examination. As for example, a witness tenders himself ready to prove a fact pertinent to the issue, and when placed on the stand proves directly the reverse, or prevaricates in such a manner as to give the whole advantage to the antagonist party, and this perhaps in concert and by the procurement of the adverse party. In such cases, and others of similar kind, the court before whom the cause is tried, has always, in the exercise of a sound discretion, allowed the party calling him to prove that at different times and in the presence of other persons, he has held different language. This, however, is not substantive evidence of itself, but is permitted *to* neutralize the evidence given by the witness. The correct distinction is taken in *Cowden* v. *Reynolds* (12 *Serg. & Rawle* 283). The party who calls a witness, shall not be permitted to impeach his general character, because that must be supposed to have been known before he was called. But where the evidence only tends to show that he had contradicted himself, and thereby lessens the force of what he had sworn in court, it may be received. "Hard indeed," says Chief Justice TILGHMAN, "would be the case of one who calls a witness, expecting that he would swear the truth, if upon finding himself deceived, he may not show that the witness had told a different story at another time." And to the same effect is the case of *Alexander* v. *Gibson* (2 *Camp.* 555). For where a witness unexpectedly gives evidence against the party calling him, although his evidence cannot be in part relied on, and the rest of it disproved, it may be entirely repudiated, and witnesses may be called on the same side to contradict him. Lord ELLENBOROUGH says, "if a witness is called on the part of a plaintiff, who swears what is palpably false, it would be extremely hard if the plaintiff's case should for that reason be sacrificed. But I know of no rule of law by which the truth is on such occasions to be shut out, and justice is to be perverted." In *Lowe* v. *Jolliffe* (1 *Blac. R.* 365), which turned on the validity of a will, all the attesting witnesses swore to the insanity of the testator when the will was executed; but they were contradicted by other witnesses, and the will was established. The party is not to set up so much of his witness's testimony as makes for him, and to reject or disprove such part as is of a contrary tendency; but if a witness is called and gives evidence against the party calling him, I think he may

[Bank of the Northern Liberties v. Davis.]

be contradicted by other witnesses on the same side, and that in this manner his evidence may be entirely repudiated. And this case comes within the principles cited; for the witness, who was the teller of the bank, and who had been examined on a former occasion on the same matter, and who had proved what was deemed material to this issue, was called by the plaintiff on the reasonable supposition that he would testify the same as before, but having failed to do so, the plaintiff's counsel proposed to ask the witness whether he had not on a former occasion given different testimony respecting the genuineness of the check, which was the matter in issue. The question was objected to by the defendant's counsel; but the objection was overruled by the court, the judge saying the witness was an unwilling witness, and might be so treated by the plaintiff's counsel. It is impossible for us to say that in so ruling the court was in error. They are much more competent to form a sound judgment in such a matter than we can be, as so much depends on the manner of the witness, and other circumstances, of which we are ignorant. And if this can be done by the introduction of other witnesses, which seems to be conceded, I can see no reason why the same object may not be attained by a direct examination of the witness himself as to his previous declarations. Indeed, justice to him would seem to require this course, to give him an opportunity of explaining any apparent discrepancy between his testimony and any declarations he may have previously made. In truth, a witness under such circumstances, becomes in many respects the witness of the adversary party, and is subject to the same rules as regulates such examination.

But it is said with truth, that there is error in admitting the evidence of a conversation between Robert M. Lee and the cashier and teller. According to his testimony, the latter admitted the checks to be forgeries. The cashier said he believed them to be forgeries, but he would not pay the checks. It would be better, he said, decided by suit. Declarations and admissions of agents or trustees of a corporation in their official capacity are evidence against those whom they represent, if made in the regular transaction of their business; but if not so made, they are not evidence. *Magill* v. *Kauffman*, (4 *Serg. & Rawle* 317). It has also been ruled, that in an action by a bank, evidence of the parol declarations of the officers of the bank is not admissible for the defendant, without proof of the particular officer's being authorized by the board of directors to speak for them, even though it should appear that the board kept no regular minutes of their transactions. *Stewart* v. *The Huntingdon Bank*, (11 *Serg. & Rawle* 267). So declarations of a person, who has been president of a bank, respecting payment made on a note, are not evidence in an action by the bank upon the note. 11 *Serg. & Rawle* 179. The cases are based on this principle, that what an agent says, does,

[Bank of the Northern Liberties, v. Davis.]

or writes, at the time of making a contract, or when engaged in the discharge of his duty as agent, are admissible against the principal. But what the agent says or writes afterwards, is not admissible. *Hough* v. *Doyle*, (4 *Rawle* 294). The declarations given in evidence were not made at the presentation of the checks, but afterwards, when they had no authority that I can discover, to make them. Such a power does not come within the general scope of the duty of either, nor is such an authority necessary in the discharge of that part of the business of the bank over which they have the control. They were witnesses for the plaintiff, and might have been called by him to prove that the signature to the checks was not genuine. Indeed, one of them was called to the stand, but, notwithstanding, the court permitted his declarations to be given in evidence to affect the defendant. In this we think the court was in error, and for this reason the judgment is reversed. It is enough to observe that the other errors were abandoned on the argument.

Judgment reversed and *venire de novo* awarded.