Williams, J.
The only questions in this case are:
1. Should the state have been permitted to interrogate its witness, Thomas Roberts, in respect to his testimony at the coroner’s inquest, and to read or repeat portions of that testimony to the witness, and then inquire of him whether he had so testified ? and if so,
2. Was it then competent for the state to prove what Roberts testified at the inquest, by the coroner’s clerk and his notes of the testimony taken on that occasion ?
(1.) It is a well established rule of evidence, that a party is not concluded by the unfavorable testimony of his own witness, but may prove his case by other evidence. He is not precluded from proving any fact relevant to the issue, by any competent evidence, though it be a direct contradiction of the testimony of a former witness called by him. And generally, where a witness is an unwilling one, or hostile to the party calling him, or stands in a situation which makes him necessarily adverse to such party, his examination in chief may be allowed to assume something of the form and character of cross-examination, at least to the extent of permitting leading questions to be put to him. But a further question arises in this case, and it is, whether the party calling a witness may, upon being taken by surprise by his unexpected adverse testimony, be allowed to examine him concerning declarations or statements previously made by him, which are inconsistent with his testimony. That such previous declarations can not thus be made substantive evidence of the facts .stated, is conceded ; nor can such examination be permitted merely to impeach the witness. But, if the testimony of the witness is material to the cause, it is of importance that it be true. It *323 not unfrequently happens that a witness under the embarassment of an examination, forgets, or omits to state, facts within his knowledge, or is disinclined to disclose fully and definitely what he knows, Ample opportunity should be afforded for the correction of such mistakes and omissions, and for eliciting fully the facts that are material to the issue. The recollection of the witness may be so refreshed by directing his attention to a former conversation or declaration, as to cause him promptly to correct his testimony or explain the apparent inconsistency. For this purpose such examination may afford valuable aid injudicial investigation ; and, if it be competent at all for that purpose, the reason for admitting it would seem to require, that the examination should be allowed to extend so far as to permit the former statements to be repeated to the witness, and inquiry to be made of him concerning them; for the repetition of the statement itself, referring to the circumstances of its utterance, would be the most likely means of awakening the recollection of the witness, enabling him to recall the facts, satisfy him of his mistake, and induce a correction or explanation. Or, if the witness be a perverse or false one, such examination may serve to probe his conscience, and move him to relent and speak the truth. We think it a reasonable rule, that a party who calls a witness, and is taken by surprise by his unexpected adverse testimony, may be permitted to interrogate him in respect to declarations and statements previously made by him which are inconsistent with his testimony, for the purpose of refreshing his recollection and inducing him to correct his testimony, or explain his apparent inconsistency, and for such purpose his previous declarations may be repeated to him ; and he may be called upon to say whether they 'were made by him. Well considered cases and text books of authority recognize the rule as stated.
(2.) The other question in the case is one of importance, and not free from difficulty. Conflicting views have been expressed upon the subject by eminent judges and authors. The diversity of opinion, however, has not been so much with respect to what the law is, as to what it is contended it should be. No reported case has been found, where the question has been con *324 sidered by this court. In the last editition of Greenleaf’s Evidence, sec. 444, it is said, “ Whether it be competent for a party to prove that a witness whom he has called, and whose testimony is unfavorable to his cause, had previously stated the facts in a different manner, is a question upon which there exists some diversity of opinion. On the one hand it is urged that a party is not to be sacrificed to his witness; that he is not represented by him, nor identified with him ; and that he ought not to be entrapped by the arts of a designing man, perhaps in the interest of his adversary. On the other hand it is said, that to admit such proof would enable the party to get the naked declarations of a witness before the jury, operating, in fact, as independent evidence; and this, too, even where the declarations were made out of court, by collusion, for the purpose of being thus introduced. But the weight of authority seems in favor of admitting the party to show that the evidence has taken him by surprise, and is contrary to the examination of the witness preparatory to the trial, or to what the party had reason to believe he would testify; or, that the witness has recently been brought -under the influence of the other party, and has deceived the party calling him.” In support of the text the following eases are cited in a note to the section : Wright v. Becket, 1 M. & Rob. 414, 416, pr. Ld. Denman; Rex v. Oldroyd, Russ & Ry. 88, 90, per Ld. Ellenborough and Mansfield, C. J.; Brown v. Bellows, 4 Pick. 179; State v. Norris, 1 Hayw. 437, 438; Dunn v. Aslett, 2 M. & Rob. 122; Bank v. Davis, 6 Watts & Serg. 285.
The high estimation in which Prof. Greenleaf’s Avork on evidence is justly hold by the profession, and its usual accuracy, as well as the'importance of the question itself, and the great doubt expressed upon it by the circuit court, may justify a someAvhat careful rcvieAAf of the authorities. Rex v. Oldroyd, Avas a prosecution for murder. “The counsel for the prosecution at the close of the case, observed to the learned judge, that they did not mean to call the mother of the prisoner, Elizabeth Oldroyd, strong suspicion having fallen upon her as having been an accomplice; but the judge thought it right in compliance Avith the usual practice, (her name being on *325 the back of the indictment as having been examined before the grand jury) to have her examined, which was accordingly done. The learned judge, observing upon the examination, that the evidence given by the woman was in favor of the prisoner, and materially different from her deposition taken before the coroner, thought it proper to have the deposition read, for the purpose of affecting the credit of her testimony so given on the trial; and in summing up the case to the jury stated, that her testimony was not to be relied upon, and left the matter of the prisoner’s guilt, entirely upon the other evidence. The question reserved for the opinion of the judges was whether it was competent for the judge, under the circumstances stated, to order this deposition to be read, in order to impeach the credit of the witness.” The report states that the judges were of “ opinion that it was competent under the circumstances for the judge to order the deposition to be read, to impeach the credit of the witness.” The report further states that, “ in this case the determination of the judges was confined to the right of a judge to call for a toitness’ deposition, in order to impeach the credit of a witness who on the trial should contradict what she had before deposed; but Lord Ellenborough and Mansfield, C. J., thought the prosecution had the same right.” In the first place it may be remarked of this case, that it is doubtful if the course taken by the learned judge at the trial, would in any particular receive the approbation of American courts. His conduct appears altogether extraordinary. Then, under the circumstances of the case, since the prosecutor declined to call the witness, and the testimony was given under the direct order of the court, she could in no sense be regarded as a witness called by the prosecution; and her deposition to impeach her, was not offered by the prosecution, but was ordered read by the judge ; and the decision of the case is expressly limited to the right of the judge to do so. It is clear the counsel for the prosecution did not consider that he possessed that right, or he would'have called the witness at all events, and availed himself of her evidence if favorable, knowing that he could destroy it, if she gave evidence contrary to that she had given before the coroner, by putting in her deposition. The only support, *326 which this case affords for the doctrine that a party may prove the contradictory statements of his own witness to impeach him, consists of the obiter of two of the twelve judges. And in Wright v. Beckett, Bolland B., speaking upon this subject said, that “ with the exception of the opinion of the two learned judges in Bex v. Oldroyd, the authorities are uniform, in establishing, that a party can not contradict his own witness, but by giving evidence of facts bearing upon the issue.” Wright v. Beckett, was an action of trespass quare claus. freg.; tried before Lord Denman C. J. in the Lancaster Common Pleas. On the trial the plaintiff’s counsel having examined four witnesses to prove that the plaintiff, and his predecessors, had immemorially exercised acts of ownership over the land in question, called a fifth, one Warrener,with a view to establish the same fact. "Warrener, however, on being examined, contradicted the other four witnesses, and the plaintiff’s counsel thereupon asked him, whether he had not given a different account of the facts to the plaintiff’s attorney, two days before. The witness gave an evasive answer, and the plaintiff’s counsel thereupon called the iffaintiff’s attorney, and proposed to ask him, whether the witness, had not given to him, upon the occasion referred to, an account of the facts different from that now given by him in court, which the court permitted him to do. The jury having found a verdict for the plaintiff, a motion for a new trial, upon the ground that the evidence of the plaintiff’s attorney had been improperly admitted, was afterward argued before Lord Denman and Mr. Baron Bolland. The judges differed in opinion; Lord Denman adhering to his ruling upon the trial, and Baron Bolland taking the opposite view. It is somewhat singular that Lord Denman in support of his opinion quotes from Butters Nisi Prius, 297, as follows : “ A party never shall be permitted to produce general evidence to discredit his own witness ; for that would be to enable him to destroy the witness if he spoke against him, and to make him a good witness if he spoke for him, with the means in his hands of destroying his credit if he spoke against him. But if a witness prove facts in a cause which make against the party who called him, yet the party may call *327 other witnesses to prove that these facts were otherwise; for such facts are evidence in the canse, and the other witnesses are not called directly to discredit the first witness, but the impeachment of his credit is incidental and consequential only.” And, it may also be noticed, that with the exception of Rex v. Oldroyd, all the cases cited by Lord Den-man to sustain his opinion, Alexander v. Gibson, 2 Campb. 555; Lowe v. Joliffe, 1 W. Blackst. R. 365; Goodlittle v. Clayton, 4 Burr. 2224; Friedlander v. The Royal Exchange Assurance Company, 4 B. & Adol. 193, are cases in which the evidence admitted, was within the rule quoted from Buller’s Nisi Brius, supra. But he says that, “ Notwithstanding my respect for the different opinion which is entertained by my learned brother now present, and, as I believe, by others of great weight and authority, I retain that on which I acted at Lancaster.” On the other hand Baron Bolland lays down the rule with great distinctness “ that a party in a cause, is not to be permitted to give evidence of a fact, for the purpose of discrediting his own witness, unless such fact would of itself bo evidence in the cause; but that where such fact is relevant to the issue, and so per se evidence in the cause, such proof is to be allowed to be given, although it may collaterally have the effect of discrediting the testimony of his own witness.” And his remark, that the cases are uniformly to that effect, with the exception of the opinion of two of the judges in Rex v. Oldroyd, and it might be added, of Lord Denman, is justified by an examination of the cases referred to, both by Lord Denman and Baron Bolland in their respective opinions.
Dunn v. Aslet, 2 M. & Rob. 122, decides that “ The counsel calling a witness who has given unfavorable evidence on cross-examination, may on re-examination, ask him questions to show inducements to betray the party who has called him.” The action was assumpsit, on a warranty of a horse, “ that he was quiet in harness.” Plea, “ that the horse was quiet in harness.” Plaintiff called a livery stable keeper as a witness* who on cross-examination, stated facts tending to show that the horse was quiet in harness, and the warranty had not been broken. On re-examinatión plaintiff’s counsel asked him *328 whether he had not been living with the defendant and his witnesses since he had been in town. This was the whole of the case. The plaintiff did not offer to prove any contradictory statements of the witness, and it is apparent that the admissibility of such evidence was in no way involved. It is true Lord Den man in the opinion says, that in Wright v. Becket, he expressed an opinion that the plaintiff might show “ that the witness had given a different account of the matter, by which different account he had been induced to call him; ” and that he thought, “ on the same principle, a party calling a witness may examine him as to any fact tending to show he had been induced to betray that party.” But the principle is not the. same, for it is generally competent to show by the witness, his relation to the parties; and the case can not be regarded as an authority for the admission of the previous contradictory statements of a witness, when offered by the party calling him.
In the case of Brown v. Bellows, 4 Pick. 179, it is held that “the plaintiff being under the necessity of calling the subscribing witness to prove the execution of the agreement, was not precluded from contradicting his testimony given upon cross-examination, in relation to other facts.” The case shows “ the name of Thomas Lord was subscribed as a witness to the agreement.” The plaintiff proposed to prove the execution of the instrument by another witness, who saw it executed, assigning as a reason that Lord was interested. The plaintiff, however, not choosing to prove the interest of Lord by his own answers, and no evidence being then in the case to show that he was interested, the judge ruled that he must be called. The plaintiff then called him, protesting that he ought not to be obliged to consider him as a witness, any further than to prove the execution of the agreement. In the course of the trial, it became material to establish the value of the fulling mill and other estate to be conveyed by the plaintiff, and that Lord was interested with the defendant in the purchase. To prove both of these facts the plaintiff examined a witness, Ormsby, who testified that Lord said to the defendant, “we had better give the twenty dollars, and then there will not be *329 any more trouble about the water; ” and that the defendant then said to the plaintiff, “ we will give you the twenty dollars.” The competency of this testimony was the subject of decision by the court. The plaintiff did not contend that it was admissible to prove the contradictory statements of Lord merely, but urged that it was competent to prove the two material facts, viz., that Lord was interested, and the value of the property. The declarations appear to be part of a conversation at which the plaintiff and defendant and Lord were present; and Lord’s statements were made in the hearing of both parties, and were adopted by the defendant. Lord’s statements became the statements of the defendant; and the court took the view urged by plaintiff’s counsel, that the testimony tended to prove a material fact. In the opinion of the court, Putnam, J., says : “Now, although it is a general rulé that a party is not to be allowed to discredit his own witness, yet that must be understood to mean, that the witness is not directly to be impeached on account of his character for truth ; but the rule is by no means to extend so far, as that a party may not call a witness to prove a fact which a witness previously called by him has denied. A party is not obliged to receive, as implicit truth, every thing which a witness called by him may swear to. If his witness has been false or mistaken in his testimony, he may prove the truth by others. Lord was called by the plaintiff from the necessity of the case, he being a subscribing witness. In his cross-examination, he stated that he was not interested with the defendant in the purchase. The plaintiff was desirous of proving to the jury, that Lord and the defendant were concerned together in the transaction ; and Ormsby testified to declarations and conduct on the part of Lord, tending to satisfy the jury that he was interested in the affair with the defendant. We think the plaintiff was not bound by the answer which Lord made on his cross-examination, but might, by another witness, disprove the fact which Lord had stated.” It needs no comment to show that the case has no application to the question under discussion. The right of a party to prove the previous statements of his witness at variance with his testimony, was not a ques *330 tion in the case. The only question being, whether a party might prove a fact material to his case, which had been denied by a former witness called by him; and its citation by Mr. Greenleaf would seem to be a mistake.
The other case, Rice v. Ins. Co., cited from 4 Pick. 439, does not appear to be in point. It. decides that, “ A witness having testified that he made a certain statement in a conversation with A, evidence was admitted, for the purpose of impeaching his credit in point of recollection, of his having made a different statement to B when A was not present.” This impeaching testimony does not appear to have been offered by the party calling the witness. The contrary is to be inferrred from the report of the case, because no objection was made to the testimony on the ground that it served to impeach the party’s own witness; the objection being of an •entirely different character, that is, that the conversation'related to a wholly collateral fact, - and, it was contended by •counsel that a witness could not be cross-examined as to a collateral fact, for the purpose of contradicting him. This was therefore the ordinary case of a party impeaching his "adversary’s witness.
The case of the Bank v. Davis, 6 W. & S. 285, goes no further than to hold that, “ Where a witness gives evidence against the party calling him, and is an unwilling witness, or in the interest of the opposite party, he may be asked by the party calling him, at the discretion of the court, whether he has not on a former occasion given different testimony as to a particular fact.” The action was against the bank, and the plaintiff called the teller as a witness, who testified concerning certain checks. The plaintiff then asked the witness whether he had not on'former occasions given different testimony respecting the genuineness of the checks. The question was objected to by the defendant, but permitted by the coui’t. The "witness answered the question, and the admission of this testimony was one of the errors assigned. The plaintiff then called Robt. M. Lee, who testified that the teller admitted the checks were forgeries. The court held that there was no error in permitting the plaintiff to inquire of the teller *331 whether he had not testified differently on a former occasion, but reversed the judgment for allowing Lee to testify to what the teller told him about the checks.
The State v. Norris, Haywood’s Rept. (N. C.) is directly in point, and goes to the extent of holding that the state, in a criminal prosecution may discredit its own witness by proving that the witness, on former occasions, had given a different account of the transaction, from that which he relates in court.” This is the report of a trial for murder before Judges "Williams and Haywood. It appears from the report, that Mrs. Thompson was called as a witness for the state, and testified to various facts concerning the homicide, some of which were not ■satisfactory to the prosecution. “The solicitor general then moved to háve leave to introduce witnesses to prove a variance between what Mrs. Thompson had sworn in court, and what she had related in several conversations to others. He admitted the rule in civil cases was, that the party producing a witness should not afterwards be permitted to discredit that witness ; but the rule had never been adopted as he knew of, in ■criminal cases.” The court said: “ The rule is so in civil ■cases, let authorities be produced to show how it is in criminal ■ones.” The report states “the gentlemen on both sides .searched for authorities, but none could be found.” Thereupon the court allowed the witnesses to prove Mrs. Thomp■son’s declarations, to be called. One witness said, in relating the story, she omitted several circumstances mentioned in her testimony. Two other witnesses called to support her credit, ■stated she told the story to them exactly as she now told it. In a note to this case, it is said that “ public opinion ran very high against the prisoner, before and after the trial;” and it may be remarked, that this is not the decision of a reviewing court, but the report of the proceedings as they occurred on the trial, and that the ruling was made in the midst of the trial, with but limited opportunity for investigation, and upon the ground that no authorities could be found.
In additon to the foregoing cases cited in the note to Green-leaf’s Evidence, counsel for the state refers to the following ones. Hemingway v. Garth, 51 Ala. 530; Johnson v. Leggett, *332 28 Kansas, 591; Stearns v. Merchant’s Bank, 53 Pa. St. 490; State v. Knight, 43 Me. 11-134.
It is held in Hemingway v. Garth, that, “ A party may ask his own witness whether he has not, on a former occasion, made statements inconsistent with his testimony on the-trial.” A witness called by (he defendant was asked if he did not, on a former trial, swear to a different statement from that then made by him; but no attempt was made to prove by-others that he did so swear, or that he made such different' statement.
Johnson v. Leggett, was an action for breach of marriage contract. The defendant called a witness, by whom he expected to prove that in a conversation with her, the plaintiff denied there was a marriage contract. The witness, contrary to defendant’s expectations, testified that in the conversation! the plaintiff claimed there was a marriage contract. The defendant then offered a witness, to prove that the witness who-disappointed him, stated on a former occasion, that the plaintiff in the conversation negatived such contract.- This testimony was rejected by the trial court, and it was sought to reverse the judgment on that ground. But the Supreme Court of Kansas affirmed the judgment, holding that if a witness, could be so impeached, it was a matter within the discretion, of the court.
In Stearn v. Merchants’ Bank, it is distinctly held that, “ A party can not discredit his own witness by proving his contradictory statements upon other occasions, but must be restricted to proving the facts to be otherwise, by other evidence.”' The decision of the court is directly against the proposition in support of which the case is cited by the prosecuting attorney, and it is probable that it was cited on account of the dissenting-opinion of Thompson, J.
The case of State v. Knight, shows ikat on the trial in a prosecution for murder, the state called as a witness, the prisoner’s mother, whose testimony when taken alone was not inconsistent with the prisoner’s innocence. The counsel for the state in his closing remarks to the jury, endeavored to show that the death of the deceased took *333 place contrary to the mother’s statement; and, disclaiming any intention of impeaching the competency or credibility ■of the witness, he insisted, upon the other facts adduced, that she was mistaken and to show that this mistake was not unnatural, nor inconsistent with the most honest intention, he referred to her extreme age, her appearance before the jury, bowed down, deaf and decrepit, and to her having forgotten her own son who addressed her as mother. This course of argument was objected to by the prisoner’s counsel, but permitted by the court, and that was the error complained of with regard to the impeachment of a party’s own witness. Upon the question the court said, “That a party calling a witness can not impeach his competency or credibility, if his testimony turns out unfavorable to him, is well established. But it certainly would not tend to develope truth, to preclude a party from showing that his witness was honestly mistaken, and no such rule is recognized by law. The rule of law is, that if a witness proves' a case against the party calling him, the latter may ■show the truth by other witnesses. * * * The mother of the prisoner had made the statement of her knowledge of the transanction, which, counsel for the state insisted was founded on mistake, in some particulars, as shown by other facts and circumstances in the case. The evidence tending to show the mistake of the witness being properly before the jury, is the subject of legitimate argument.” It is obvious that this case does not support the proposition to which it is cited.
In the note to sec. 444 of Green!eaf’s Evidence, the reader is directed to compare the following cases with those cited to sustain the text: Greenough v. Eccles, 5 C. B. n. s. 786 ; Reg v. Williams, 6 Cox C. C. 343 ; The Lochlibo, 1 Eng. L. & Eq. 655 ; 3 Rob. Adm. 310; Com. v. Hudson, 11 Gray, 64, People Safford, 5 Denio (N. Y.) 112 ; Bullard v. Pearsall, 53 N. Y. 230 ; Mc Daniel v. State, 53 Ga. 258.
The case of Greenough v. Eccles, arose after the passage of the Common Law Precedure Act of 1853, (17 & 18 Vic.,) sec. 22. chap. 12 of which provides that “A party producing a witness shall not bo allowed to impeach his credit by general evidence of bad character, but he may, in case the wit *334 ness shall in the opinion of the judge, prove adverse, contradict him by other evidence, or by leave of the judge ‘prove that he has made at other times, a statement inconsistent with his present testimony ; but before such last mentioned proof can be given, the circumstances of the supposed statements, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statements.” The only matter before the court being the construction and meaning of the statute, the case of course can have no important bearing on the question under discussion.
Reg. v. Williams, was a prosecution for manslaughter. One of the witnesses for the prosecution having testified that he saw nothing done to the deceased after he was on the ground, counsel for the prosecution proposed to put the deposition of the witness, on the coroner’s inquest, into his hands. This was objected to, but Williams, J., said: “ This very point was raised before me on the Welsh circuit, where a witness gave evidence different to what was expected. I thought it a point of some difficulty, but admitted it to be done on the ground of refreshing the memory of the witness; and the court of Queen’s Bench afterwards held that I was right.” The syllabus of the case is: “ Where a witness for the prosecution gives a different answer on examination in chief to that which was expected, his deposition before the coroner, or justices, as. the case may be, may be put in his hands for the purpose of refreshing his memory, and the question then put to him. If the witness persists in giving the same answer after his memory has been so refreshed, the question may be repeated to him from the deposition, in a leading form.” This .is as far as the case goes, and is. in strict accordance with the conclusion already announced upon the first question presented by the record in the case at bar.
The Lochlibo, was a proceeding in the High Court of Admiralty on behalf of the Aberfoyle, a vessel lying at. anchor, against the Loehlibo, for running into her, and the chief defense was, that the Loehlibo had a licensed pilot on board who had the exclusive direction of the vessel. A witness. *335 called in support of the plea, contradicted it. It was then proposed to prove that the witness had given the proctor an entirely different statement of the transaction from that sworn to on his examination. The court held the proposed evidence incompetent and excluded it. Dr. Lushington discusses the subject at length, and in the course of the opinion says that the rule in courts of common law is, “ that if your witness upon being examined in chief, or cross-examined, even in that case,, does depose utterly contrary to what might reasonably be expected of him, you shall be at liberty on the trial to adduce other witnesses, for the purpose of proving the facts which you originally intended to prove, and consequently, of necessity, by such evidence, negativing that which the witness had so said.” But, he says, “ I should be most reluctant myself, unless the rule of law positively compelled and coerced me, at any time to admit the statement of a witness made to a solicitor or proctor, antecedent to the examination of a witness, and signed by him, for the purpose of contradicting that witness. It is, of course, the duty both of a proctor and solicitor, before they bring forward a witness for examination and produce him in the cause, to ascertain, as directly as they can, the testimony that witness is likely to give; but I have yet to learn that a witness is to be tied and pinned down by his signature before. I think it is for the interests of justice, and the only way to get at the truth, that a witness should go before the examiner to give his evidence, not tied down or coerced by any statement previously made to any solicitor or proctor in the cause.”
In 3 Rob Adm. 310, there is no allusion to the subject under discussion.
Commonwealth v. Hudson, 11 Gray, 64, decides, that “ A witness called by the commonwealth on a criminal trial, can not, upon being recalled by the defendant, be cross-examined by the district attorney upon his testimony before the grand jury.” The indictment was for unlawfully selling intoxicating liquors. A witness for the prosecution testified that he drank liqnor in defendant’s shop but once. “The defendant, while putting in his defense, recalled the same witness, and *336 examined him only in reference to certain threats made in his presence and hearing against the defendant by another witness for the commonwealth, and to a debt from him to defendant.” The district attorney on cross-examination, among other things in regard to the origin of this debt, and whether it was for liquor, put the question. “ Did you not testify before the grand jury that you bought intoxicating liquor two or three times of Lewis in defendant’s shop ? ” The witness answered that he did so testify. The defendant excepted to this testimony, and carried -his exceptions to the Supreme Court, where they were sustained. Shaw, C. J., in the opinion remarked that the testimony could’ “ only be to disparage the witness, by showing that he testified differently. The whole course of practice is otherwise is this commonwealth.”
The conclusion of the court in the case of People v. Safford, 5 Denio (N. Y.) 112, is stated as follows : “ "We think that a party should in no case be allowed to give evidence for the sole purpose of impeaching his own witness. On this ground a party is precluded from giving evidence that his witness is of bad character, nor should he be permitted to give evidence of any description which can only tend to discredit the witness. * * * Evidence that contradictory statements have been made by a witness, is only allowable with a view to his impeachment, a ground not open to the party producing the witness.” The pargraph of the sylabus on this point is : “ It is not competent for a party to discredit a witness called and examined by him, by asking him whether he had not made statements upon another occasion contradictory to the testimony which he had given.”
Bullard v. Pearsall, 53 N. Y. 230, decides that “Where a party calling a witness is surprised by testimony contrary to his expectations, he may be permitted to interrogate the witness in respect to previous declarations, made by the latter inconsistent with his testimony, for the purpose of probing his recollection, and by showing the witness that he is mistaken, inducing him to correct his evidence, or by recalling to his mind the statements previously made, drawing out an explanation of his apparent inconsistency, and also for the pur *337 ■pose of showing the circumstances which induced the party to call him, and such inquiries will not be excluded simply because they may result unfavorably to the witness. But where the sole effect of an affirmative answer to a question asked by a party to his own witness will be to discredit the witness, it is properly excluded.” And in the opinion of the court it is •added : “ In case he (the witness) should deny having made previous statements inconsistent with his testimony, we do •not think it would be proper to allow such statements to be proved by other witnesses; but where the questions as to such statements are confined to the witness himself, we think they are admissible.”
The decision in McDaniel v. State, is founded on a statute -of Georgia, which provides that a party shall not be permitted to discredit his own witness unless he first shows to the court that he has been entrapped by previous contradictory statements made by the witness. In construing this statute the court say, “ It is not sufficient that he (the witness) shall have made contradictory statements; such •statements must have deceived, and led the party complaining to introduce him, and thus, unwittingly, to have been dam.aged by statements different from what he expected. Under such circumstances, the law permits the party to viólate that ■salutary rule which assumes, that one who brings a witness •before the court, has, at least, confidence in his truthfulness.”
From this examination, thus made at length, of all the cases ■cited in Greenleaf’s Evidence; and referred to by counsel for the defendant in error, it appears that but one case is found among them. State v. Norris, supra, which can be regarded as an authority in favor of the proposition that a party may be allowed to prove the previous statements of his own witness, which are at variance with his testimony on the trial. To this case may be added the opinion of Lord Denman, and occasional dissenting opinions that may be met with in the reports.
Turning now to the authorities which deny the admissibility of such evidence, some of the leading works on evidence *338 may first be noticed. Dr. Wharton, in the last edition of his work on evidence, says : “ By a settled rule of the English common law, while a party may contradict his own witnesses, though this may discredit them, he is not ordinarily permitted to impeach them, even though called afterwards by the opposite side, either by general evidence, or by proof of prior contradictory statements.” “ In this country,” says the same author, .“while a party can not ordinarily discredit his witness, his right to prove facts inconsistent with those stated by such witness is unquestioned, even though this discredit the witness materially; and he may examine the witness in advance as to such conflicting facts, arraying them, as it were, against him, though beyond this, in the way of impeaching the witness, the privilege does not go.” 1 Wharton’s Ev. sec. 549.
In Phillips on "Evidence, the English cases are reviewed, and the arguments of Lord Denman in Wright v. Becket, supra, in favor of permitting a party to prove the previous contradictory statements of his own witness, are fully presented. The author concludes his discussion of the subject as follows : “ It must be admitted, however, that the weight of modern authority is in opposition to the opinion, reasoning and arguments of Lord Denman above stated.” 2 Phillips’' Ev. p. 831 (5 Am. Ed.).
The subject is also discussed in Starkie’s Evidence, where the English cases are also reviewed, and the conflicting opinions of Lord Denman and Baron Boland, in Wright v. Becket, are referred to, and that author says that “ notwithstanding the reasons above suggested, the prevailing opinion seems to-be that a party who calls a witness is not at liberty then to impeach his credit, and nullify his testimony.” Starkie’s Ev. p. 250 (10th Am. Ed.).
To the same effect is Taylor’s Evidence, vol. 2, p. 951, sec. 1049, and Best on Evidence, sec. 645. These conclusions are-fully sustained by the reported cases, as an examination of them will show.
Regina v. Ball, 8 Car. & P. 745, was a prosecution for assault with intent to murder. The case turned upon the-identity of the prisoner, whom the prosecutor swore' he had *339 never seen before the evening of the assault, when, he testified, he had seen him in the beer shop of Mrs. Sarah Turner. The prosecution then called Sarah Turner, who, in her evidence contradicted the prosecutor as to the fact of the prisoner having been at her house on the evening in question. In the course of the examination in chief, the counsel for the prosecution was permitted to ask the witness if she had been examined before the magistrate. She said she had, twice; that her statements had been taken down in writing, and that upon the last occasion she had signed- the deposition; and she stated that she had then given the same account that she now gave in court. It was then proposed by the counsel for the prosecution to prove that the statements made before the magistrate were wholly inconsistent with the account given at'the trial. Erskine, J.: “You can not put in evidence for the purpose of discrediting your own witness. You may call other witnesses to prove the facts denied by this witness, and incidentally contradict her, and show her to be unworthy of credit; but you can not call a witness,--or give evidence not otherwise admissible, for the purpose of discrediting your own witness.”
In the People v. Safford, supra, the conviction of the prisoner was reversed, solely on the ground that the trial court admitted evidence of the same character as that excluded by Erskine J., in the above case of Regina v. Ball.
In the case of the Commonwealth v. Welsh, 4 Gray, 535, it is held that, “A witness who has testified in chief that he does not know certain facts, can not, although he shows a disposition to conceal what he knows, be asked by the party calling him whether he did not on a former occasion swear to his knowledge of those facts.” In the course of the opinion, Shaw, C. J., said : “The evidence of what the witness testified before the grand jury ought not to have been received. It bore upon no question pertinent to the issue. * * It could only be to disparage the witness, and show him unworthy of credit with the jury, which was inadmissible.” The same rule was followed in the case of People v. Jacobs, 49 Cal. 384. On the trial of a prosecution for rape, a witness was called by the *340 prosecution to prove threats by the prisoner. The witness testified the prisoner made no threats, and the prosecutor was then permitted to call a witness who testified that in a conversation with him, the former witness stated the prisoner had made threats. For the admission of this evidence the judgment was reversed.
In Melhuish v. Collier, 14 Jur. 621, (15 Ad. & Ell. 69 Eng. Com. L. 877), it is held that “where a witness gives evidence adverse to the party who calls him, he may be asked whether he has not given a differeht account of the matter in question before the trial; but if the witness denies it, the person to whom he gave that account can not .be called to contradict him;” and “where a witness gives evidence of a fact adverse to the party who calls him, other witnesses may be called to disprove the fact, if it be relevant to the issue in the cause.” See also Holdsworth v. The Mayor of Dartmouth, 2 M. & Rob. 153; Allay v. Hutchings, Ibid, 358; Winter v. Butt, Ibid. 357.
This is the doctrine- maintained by a long line of American cases, among them the following: Thompson v. Blanchard, 4 N. Y. 303 ; Pollack v. Pollack, 71 N. Y. 137 ; Coulter v. Express Co., 56 N. Y. 588 ; Nichols v. White, 85 N. Y. 531; Gadly v. Dyer, 91 N. Y. 312 ; Becker v. Koch, 104 N. Y. 394; Cox v. Eayres, 55 Vt. 24; Bauskett v. Keitt, 22 S. C. 187, 197; Burkhalter v. Edwards, 16 Ga. 593; B. & O. R. R. v. State, 41 Md. 268; Bullard v. Pearsall, 53 N. Y. 230; Stearns v. Bank, 53 Pa. St. 490; Queen v. State, 5 Har. & John 232; Adams v. Wheeler, 97 Mass. 67.
Statutes, similar in their provisions to the English common law procedure act, have been adopted by Massachusetts, Kentucky, Georgia and some of the other states. The enactment-of such statutes, is itself, a recognition of the necessity of a resort to legislation to accomplish the change in the rule thereby effected, and has been so regarded by the courts of the states where they have been adopted. The Kentucky statute on the subject is contained in section 660 of the civil code of procedure, which is also made applicable to criminal cases. It provides that “the party producing a witness may contradict *341 him by showing that he has made statements different from his testimony.” The supreme court of that state, in the case of Champ v. Commonwealth, 2 Metc. (Ky.) 17, concerning that provision said that, “prior to the adoption of the code, a party who was surprised by the testimony of his own witness, was allowed to contradict him, only by proving that the fact stated in evidence was different. By the code as already shown, an additional means of contradiction is allowed — it may be shown that the witness has made statements different from his present testimony.” In Brooks v. Weeks, 121 Mass. 433, Endicott J., in commenting upon the Massachusetts statute says; “Before its passage the witness could not be directly contradicted. The object of the statute is simply to allow the party to impeach the credibility of his witness by showing, in the manner pointed out, that he has made statements inconsistent with his testimony.” And in Ryerson v. Abington, 102 Mass. 526, Gray, J., after quoting the statute proceeds as follows : “ So great a change in the rules of evidence, giving so extensive a power to a party to introduce proof in contradiction and disparagement of a witness put upon the stand by himself, uncontrolled by the discretion of the judge before whom the trial is had, must be kept strictly within the bounds of the statute.” An extract from the opinion of the court in the case of McDaniel v. State, supra, has already been given, showing the view taken of the subject by the supreme court of that state.
A diversity of reasons for their contention, are given by the advocates of the admissibility of evidence offered by a party to prove contradictory statements made by his witness. One is, that it should be admitted in order to set the party right before the jury ; another, that it is necessary to prevent a party from being sacrificed by the contrivances of designing witnesses; and still another, that a party should have the same right to impeach his own witness, when his testimony is unfavorable to him, that he has to impeach his adversary’s. The last one is chiefly urged by Jeremy Bentham in his Rationale of Judicial Evidence 70-79, and adopted by Mr. Appleton in his treatise on the Law of Evidence; but it has never received judicial *342 sanction, unless it be found in the opinions expressed by Lord Denman. The first of the reasons stated appears altogether insufficient. The object of judicial inquiry is to determine the truth of the issues. To be of any value, the evidence given should be relevant to the issues Hence a party may prove any fact material to the issues, though such proof contradict and collaterally discredit his own witness : but he can not give-evidence collateral to the issues, merely to contradictor discredit his own witness. It has never been claimed that such contradictory statements of the party’s witness, are evidence of the facts so stated. What aid then, can their proof afford, in ascertaining the facts at issue ?” If without such evidence the party must fail, he must certainly do so with it. The only difference is, that in the latter case, the party, in addition to having a cause which he failed to prove, would have a discredited witness, by whose testimony he attempted to prove it. It is obvious such testimony is wholly irrelevant unless it be competent by way of impeachment; and if one method of impeachment is open to the party calling the witness, no reason can be given why every legitimate means of impeachment should not be allowed him. The other reason assigned for the admissibility of this kind of testimony is, that without it a party might be sacrificed by the contrivances of an artful witness, who, it is said, might through collusion with the opposite party, or from other vicious motive, by favorable statements induce a party to call him and then testify against him, and in this way ruin his cause, unless proof of the previous statements of the witness be permitted. This is but an argument in favor of the party’s right to impeach his own witness, for, it must be conceded that* no other legitimate effect can be claimed from the proof of the contradictory statements than that of neutralizing the hostile testimony, by casting discredit on the witnesss. Yet while this is its only legitimate effect, the danger of sacrificing one party by admitting it, is not less than that of sacrificing the other by excluding it. It is not difficult to understand that the evil consequences to be apprehended from permitting the former statements of a witness, in contradiction of his testimony on the trial, to be proven *343 by the party calling him, may be quite as serious, and the apprehension as well grounded, as any likely to result from adhering to the rule as now established. A person might, from motives of spite or revenge, make statements against the accused in a criminal case, which, if true, would be sufficient to convict, for the purpose of having them communicated to the prosecutor, and thus procuring himself to be called as a witness; and if, when put upon his oath on the trial, he testifies truly that he knows nothing about the case, the prosecuting attorney were then allowed to prove the former statements of the witness, the jury might give them such weight as would turn the scale in a doubtful case, and the revenge of the witness would be gratified. Then, a party might operate upon a witness, by inducing him to make statements in his favor when not under oath, for the purpose of manufacturing evidence in his behalf, and if when examined by him, the witness should feel the obligation of his oath, and abandon his purpose to testify falsely, or be obliged to do so under cross-examination, the party who operated upon him would be prepared to destroy his credibility by proofs of the false statements he procured him to make, and thus not only prevent his being injurious, when he could not or would not be useful, but have whatever advantage such statements might give him to the jury. The rule that a party can not discredit his own witness, by proving that he had made statements at other times inconsistent with his testimony on the trial, is the result of long experience, and has been steadily adhered to by the courts of this country and of England. That the rule has generally operated favorably in judicial investigations, can hardly be questioned. If it be conceded it has not had that, effect in every instance, as much may be said of many well established rules of law, and the general good result is to be regarded, rather than the particular inconvenience; and it may well be doubted whether it is not a sounder rule than that adopted by some statutes, which leave it within the unregulated discretion of each judge, to admit such, and only such testimony as may seem to him expedient.
[Note. — The last four cases were decided before Owen, C. J., retired frorui the Bench, but the opinions were not announced until afterwards. — Rep.]
For the error in admitting in evidence the statements of the witness, Roberts, at the coroner’s inquest,

The judgments of the courts below must be reversed, and the cause remanded for a new trial.

Minshall, J., dissents from the second proposition of the-syllabus and from the judgment of reversal. Spear, J., did 'not sit.
*345 OA.SES ARGUED AND DETERMINED IN THE SUPREME COURT OF OHIO. JANUARY TERM, 1889. Hon. THAD. A. MINSHALL, Chief Justice. Hon. FRANKLIN J. DICKMAN, ' Hon. WILLIAM T. SPEAR, Hon. MARSHALL J. WILLIAMS, [ Judges' Hon. JOSEPH P. BRADBURY,